

**Dated: March 29, 2017**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 15-14689-JDL |
| Nikki Marie Waldrop, ) | Ch. 7 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| Nikki Marie Waldrop, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ADV. 16-1015-JDL |
| ) | |
| Discover Bank, and ) | |
| Stephen L. Bruce, Esq., ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER GRANTING IN PART
### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is an adversary proceeding brought by Plaintiff/Debtor, Nikki Marie Waldrop,

("Waldrop"), alleging that Defendants Discover Bank ("Discover") and its attorney, Stephen

Bruce, ("Bruce"), violated the automatic stay by instructing Waldrop's garnishee-bank to

retain possession of funds garnished pre-petition pending the further order of the court.

This matter comes on for consideration upon Bruce's *Motion for Summary Judgment* [Doc. 55], Discover Bank's *Motion for Summary Judgment* [Doc. 64], (collectively, the "*Motion*"), Waldrop's *Response to Motion for Summary Judgment* (the "R*esponse*") [Doc. 63], Bruce's *Reply to Waldrop's Response (*the "*Reply"*) [Doc. 65] and Waldrop's *Response to Discover Bank's Motion for Summary Judgment* [Doc. 67].[1]

This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. §1334.

After considering the *Motion*, the *Responses,* the *Reply*, the pleadings, the evidence and the applicable authorities, and for the reasons set forth below, the Court hereby partially grants Defendants' Bruce and Discover's *Motions for Summary Judgment.* While not addressed by Waldrop or Bruce, and only briefly by Discover, the Court's initial inquiry is whether Waldrop has standing to seek sanctions attributable to any alleged stay violation. The Court finds that Waldrop does have standing. However, based on the undisputed facts, Bruce and Discover did not willfully violate the automatic stay. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. R. 7052, 7056 and 9014.

## I. **Findings of Fact**

1. On October 5, 2015, default judgment was entered in the state court case styled "*Discover Bank v. Nikki Waldrop*, Cleveland County Case No. CS-2015-1346, against

---

[1] After the Motions for Summary Judgment had been fully briefed and taken under advisement, the Tenth Circuit Court of Appeals handed down its decision in *WD Equipment, LLC v. Cowen (In re Cowen)*, 849 F.3d 943 (10th Cir. 2017). The case is discussed at length herein. On March 3, 2017, counsel for Discover sent a letter to the Court regarding the *Cowen* decision. On March 6, 2017, counsel for Waldrop sent the Court a letter in response setting forth its position with regard to the *Cowen* decision. The Court filed both letters of record. [Docs. 78 and 79]. The Court has taken these letters into consideration in entering this Order.

Waldrop in the amount of $5,977.13 with interest, costs, and attorney's fees in the amount of $896.57 (the "Judgment").

2.    On December 3, 2015, Discover Bank filed and issued a garnishment to Waldrop's Bank, J.P. Morgan Chase ("Chase"), seeking to enforce the Judgment. Waldrop asserts that *when* the garnishment was served upon Chase is disputed. Bruce's *Motion* asserts that the garnishment was served on Chase on December 7, 2015, at 8:42 A.M., as evidenced by a FedEx Tracking Information. [Doc. 55, ¶ 3; Doc. 55-4]. The garnishment Answer verified by Chase on December 9, 2015, indicates that it was served with the garnishment summons on Tuesday, December 8, 2015. [Doc. 55-8]. On the other hand, Waldrop asserts that the garnishment was received and processed by Chase on either December 8 or December 9, 2015, and thus "there is a question of material fact as to whether Chase was actually served on December 9th." [Doc. 63, ¶ 3].[2] The Court finds that there is no evidence that the garnishment was served post-petition. The only evidence of any activity with regard to the garnishment on December 9, 2015, is that Chase *signed* its garnishment Answer on that date, but the garnishment Answer clearly indicates that it was "served with the garnishment summons on Tuesday, December 8, 2015 . . .". [Doc. 63-1]. The fact that the Garnishment Answer was *signed* on December 9, 2015, is irrelevant for purposes of whether Discover had a pre-petition garnishment lien on the Chase funds. It did.

---

[2] The bankruptcy was filed at 9:34 A.M. CST, on December 9, 2015. Under Oklahoma law, a garnishment lien becomes effective as of the time of the service of the garnishment. 12 O.S. § 1185; See e.g., *First Mustang State Bank v. Bloodworth*, 1991 OK 65 ¶ 19, 825 P.2d 254, 258. If the garnishment had been served after the exact time of the bankruptcy filing, any garnishment lien would be deemed void as being in violation of the automatic stay imposed by § 362(a).

4.  On December 9, 2015, (the "Petition Date"), Waldrop filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

5.  On December 11, 2015, Waldrop's attorney faxed a letter dated December 9, 2014 (sic), to Bruce asking that he "contact Chase Bank and release her (Waldrop's) funds immediately." [*Response*, Doc. 63-2].

6.  On December 15, 2015, Chase filed an Answer to the garnishment in the state court case stating that it was holding $1,033.64 in Waldrop's account. [Doc. 63-1].

7.  On December 16, 2015, Bruce faxed the following letter to Chase:

> Dear Managing Officer:
>
> My firm represents DISCOVER BANK in the referenced case. We served a garnishment on your institution on 12/7/15. The Defendant has filed bankruptcy. Please hold the garnishment funds until further order of the court.
>
> If you have any questions, please contact my office.

[Doc 63-5].

8.  As will be discussed in greater detail below, on December 16 and 17, 2015, there were at least three telephone conversations between Waldrop's attorney, John Cloar ("Cloar"), and Bruce's office regarding the garnishment.  In his *Motion*, Bruce asserts that Cloar agreed to, or at least led Bruce to believe, that Chase was permitted to hold onto the garnished funds (and not release them to Discover) pending further order of the court or agreement of the parties. [*Motion*, Doc. 55, ¶9; Doc. 55-6].  In her *Response*, Waldrop and Cloar by Affidavit deny that any such agreement or understanding was reached. [*Response*, Doc. 63, ¶9; *Cloar Affidavit*, Doc. 63-3, ¶ 7].  The telephone conversations between Cloar and Bruce's office were recorded. The audio recordings with written transcripts thereof establish that there was such an agreement or understanding.

4

## II. Standing

Before proceeding to address the merits of both Bruce and Discover's *Motions for Summary Judgment* as to whether there was a willful violation of the automatic stay, it is incumbent upon the Court to address whether Waldrop has standing to assert such an alleged violation. Discover asserts that Waldrop lacks standing to pursue her claim for willful violation of the automatic stay because upon commencement of the bankruptcy case she no longer had any rights in or legal control of the funds which were garnished. Discover argues that only the Chapter 7 Trustee, who is charged with administering property of the estate under 11 U.S.C. § 704,[3] has standing to pursue an action for violation of the automatic stay until such time as the subject property is abandoned by the trustee or is determined to be exempt. *In re Bucchino*, 439 B.R. 761 (Bankr. N.M. 2010). Neither Waldrop's Response to Discover's Motion for Summary Judgment nor Bruce's Motion for Summary Judgment address the issue of Waldrop's standing raised by Discover. Despite the somewhat cursory discussion of standing only raised by Discover, a federal court has the obligation to review *sua sponte* whether it has subject matter jurisdiction under Article III's case-or-controversy requirement. *Juidice v. Vail*, 430 US 327, 331, 97 Sup. Ct. 1211 (1977).

In order to establish that it has constitutional standing to bring suit:

> A plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[3] Hereinafter, references to the United States Bankruptcy Code, 11 U.S.C. §§101-1303, will be by section number only.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 -181, 120 S.Ct. 693, 704 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 561,112 S.Ct. 2130, 2136 (1992)); *Commonwealth Properties Advocates, LLC v. Mortgage Electronic Registration System, Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011); *C. W. Mining Co. v. Aquila, Inc. (In re C. W. Mining Co.)*, 636 F.3d 1257, 1260 & n. 5 (10th Cir. 2011) (noting that standing is "more stringent" in bankruptcy cases).

The issue of whether debtors have standing to maintain claims for violations of the automatic stay with respect to property of the estate has been the subject of numerous cases, many of which involved bank accounts where the bank (as opposed to the creditor action here) froze debtors' accounts when they filed for bankruptcy protection.  The majority of these cases hold that the debtors did not have standing to maintain claims where the debtor has not claimed the property as exempt or where it has not been abandoned. *New Era, Inc.*, 135 F.3d 1206 (7th Cir. 1998) (debtor may not enforce automatic stay to protect the estate); *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935 (D. N.M. 2008); *In re Lee*, 2011 WL 5452830 (Bankr. Alaska 2011); *In re Phillips*, 443 B.R. 63 (Bankr. M.D. N.C. 2010); *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino)*, 439 B.R. 761 (Bankr. N.M. 2010).

This line of cases begin with the premise that under § 541(a)(1) of the Bankruptcy Code, "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate . . . [w]hich is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case".  Hence, when a debtor files a Chapter 7 petition, that property is transformed into estate property subject to the sole control and dominion of the bankruptcy trustee.  Therefore, the funds on deposit with Chase in this

6

case became property of the estate upon the filing of the bankruptcy, albeit subject to Discover's pre-petition garnishment lien.

The specific stay provision at issue here is § 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". At the time of filing the debtor must file a list of property that he claims as exempt. 11 U.S.C. § 522(l). "[A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). If a party in interest does not object during the objections period, however, "the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l). An interested party has no duty to object to the amount of the claim of exemption so long as the asserted value of the property claimed as exempt is within the limits allowed by the applicable exemption statute. *Schwab v. Reilly*, 560 U.S. 770, 782, 130 Sup. Ct. 2652 (2010). The effect of an exemption is that the debtor's interest in the property is withdrawn from the bankruptcy estate and revests in the debtor. *Owen v. Owen,* 500 U.S. 305, 308, 111 S. Ct. 1833 (1991).

There is no Tenth Circuit precedent *binding* on this Court as to whether a debtor has standing to assert a violation of the automatic stay in the absence of an allowed claim of exemption or the trustee's abandonment of the property. The Tenth Circuit BAP in *In re Cook v. Wells Fargo, N.A. (In re Cook),* 2012 WL 1356490 (10th Cir. BAP 2012,) *aff'd,* 520

Fed Appx. 697 (10th Cir. BAP 2012)(unpublished)[4] held that only the trustee, not the debtor, had standing to bring a stay violation action against a depositary bank regarding funds on deposit which constituted proceeds of intellectual property pledged as security for a loan to the bank.  In affirming the bankruptcy court, the BAP, in this unpublished decision, held:

> Upon the filing of a bankruptcy petition, an estate is created, which is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. The Trustee is a representative of the estate in a Chapter 7 case. The Trustee shall collect and reduce to money the property of the estate. It is the Trustee to whom the obligation to turn over property of the estate runs. And it is the Trustee who has the right to use property of the estate. A Chapter 7 debtor has none of these rights
>
> * * *
>
> Because the (intellectual) property belongs to the estate, (the debtor) has no interest in the outcome of any alleged stay violations. In other words, (the debtor) has not been injured. Rather, (debtors) bankruptcy estate, a separate legal entity from (the debtor), is the alleged injured party.

The BAP then went on to hold that a debtor's inchoate or eventual, but undetermined, right to an exemption was not sufficient to confer standing:

> We find the line of cases that hold a mere claim of exemption does not confer standing more persuasive. The purpose of the automatic stay is to protect debtors, but it also protects the estate and allows for liquidation to proceed in an orderly manner .... Unilateral intervention by a party in interest, however laudable that party's motivation, may conflict with the trustee's strategy and result in a smaller, rather than a larger, recovery.  An unauthorized plaintiff may disclaim any duty to

_____

[4] The Tenth Circuit decision was not selected for publication in the Federal Reporter, and is not binding precedent, except for the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and Tenth Circuit Rule 32.1.

protect the interests of the estate. The Court and the trustee would lack the degree of control over a volunteer plaintiff necessary to ensure that the duty being assume is faithfully and competently performed. In short, a bankruptcy estate, like a ship, can have but one captain." (citing, *Price v. Gaslowitz,* 173 B.R. 434, 440 (Bankr. N.D. Ga.1994).

This Court gives great deference to decisions of the BAP, regardless of whether that decision is published or constitutes binding precedent.  In this case, however, the Court believes that the analysis and holding of the bankruptcy court in *In re Trujillo,* 485 B.R. 238 (Bankr. Colo. 2012), was correct in its view that a court must determine the nature of the interest affected by the stay violation in order to determine whether the debtor has suffered a "concrete and particularized" invasion of a "legally protected interest" (i.e. has Article III standing), and whether the debtor is an "individual injured" by the creditor stay violation (i.e. has prudential standing under § 362(k)) granting the debtor standing to assert a violation of the automatic stay.  In *Trujillo* the debtor asserted an interest in at least some of the wages being withheld post-petition.

*Trujillo* noted that cases like *In re Cook* and others holding the debtor has no standing to assert a violation of the automatic stay with regard to the estate property until an exemption is granted or the property abandoned rest upon four major assumptions: (1) a chapter 7 debtor has no right to use property of the estate until his exemptions have become fixed; (2) if the debtor cannot use the property, then he has no injury; (3) standing to assert a stay violation is exclusive, in that only one person may possess the requisite standing; and (4) while property remains property of the estate, the chapter 7 trustee is the party with standing because he is the representative of the estate. *Trujillo*, 485 B.R. at 248. After a thoughtful survey of the case law, *Trujillo* recognized that "the legally protected

9

interest (for standing) need not involve a direct pecuniary loss", *Bucchino*, 439 B.R. at 768-

69, but only that "injury" must be tied to the interest that the law seeks to protect. That

"interest" which the Debtor, or a creditor, has is the automatic stay.  As to the debtor:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

The second protection of the automatic stay is given to creditors generally:

> Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

> Neither of these goals necessarily involves a loss in value to the estate. When one creditor is paid to the detriment of another creditor, it does not cause a loss to the estate generally. Likewise, the temporary 'breathing spell' has no impact on the estate. It may only involve the debtor's peace of mind, an injury that is difficult to quantify in dollars and cents. Yet this legislative history evidences Congressional intent to foster a debtor's breathing space and equal treatment of like creditors. *If a violation of the automatic stay causes an injury to either a particular creditor or to a debtor's breathing spell, that injury should be sufficient to confer standing.* (Emphasis added*).*

*Trujillo,* 485 B.R. at 252 (citations omitted).

*Trujillo* further pointed out the language of § 362(k) conveys "this broader view of

standing by Congress' use of the term 'individual'":

> Except as provided in paragraph (2), *an individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages. (Emphasis added).

Thus, the Court concluded:

> "Individual" is broad enough to encompass debtors, creditors, trustees, and other parties in interest. The test for standing, therefore, should be tethered only to the type of legal interests intended to be protected by the automatic stay. As long as those interests have been injured, any individual harmed by the violation has standing to assert a claim."

> Thus, in the context of stay violations, standing is not exclusive. A specific stay violation might cause injury to a debtor, the estate, and a particular creditor. There is no reason why all three parties could not assert damages for the stay violation. The court will merely apportion the damages to each according to the injury suffered by each.

*Id*, pg. 253.

In the present case, Waldrop asserted her interest in a portion of the funds on deposit with Chase (although inartfully in her original Schedules) and by originally demanding that Chase and Discover, through Bruce, release the funds as violating the automatic stay. It also appears clear as a practical matter that any dispute as to an interest in the funds was going to be between Waldrop and Discover as it would be highly unlikely that the Chapter 7 trustee would assert any right to the approximately $1,000.00 in the account where those funds were probably subject to a pre-petition garnishment lien and/or were subject to a potential claim of exemption or lien avoidance action by the Debtor. This is evidenced by the fact that immediately following the First Meeting of Creditors the Trustee filed a Report of No Distribution indicating an intent to abandon any claim to

potential assets of the estate.[5]  It is Waldrop's protection of any interest in the funds by virtue of the automatic stay that gives her standing to seek enforcement for any violation of the stay.  Correlatively, if Discover as a lien creditor believed its interest might have been harmed during the pendency of the stay, it could have sought adequate protection for those lien rights under § 361, relief from the automatic stay to enforce its lien rights under § 362(d), apply for an emergency hearing under § 362(f) or seek a "comfort order" that its actions were not violative of the automatic stay.

For the reasons stated above, the Court finds that Waldrop has standing to assert a claim for violation of the automatic stay.  Whether, based on the undisputed material facts, she can sustain such a claim against Bruce and Discover's Motions for Summary Judgment is discussed below.

### III. Summary Judgment Standard

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.  "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion,

---

[5]  The Court recognizes that a Trustee's Report of No Distribution is insufficient to accomplish abandonment of estate property, which can be effectuated solely in the manner specified in § 554 and Fed. R. Bankr. P. 6007(a).  *In re Bucala*, 464 B.R. 626, 634 (Bankr. S.D. N.Y. 2012); *In re Hawk,* 524 B.R. 706, 716 (Bankr. S.D. Tex. 2015).  Nevertheless, the Report is indicative of the fact that the real interests being protected were those of Waldrop and Discover, certainly not exclusively the bankruptcy estate.  A Final Decree closing the case was entered on April 18, 2016, but the same was vacated by the Court's Order to Vacate Final Decree entered on September 13, 2016 [Doc. 26].

and . . . [must] demonstrate the absence of a genuine issue of material fact". *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6ᵗʰ Cir. 1994).

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See, *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10ᵗʰ Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10ᵗʰ Cir. BAP 1997). Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

"[T]he non-moving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof". *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10ᵗʰ Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998).

## IV. Discussion

**A.    Discover and Bruce's instruction to garnishee-Chase to hold onto the garnished funds pending an order of the bankruptcy court did not constitute an act to exercise control over such funds in violation of the automatic stay.**

Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed.  In relevant part, § 362(a) provides  the filing of the petition operates as a stay, applicable to all entities, of---

> (1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title***;
>
> (2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3)    any act to obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate;***** (Emphasis added).

There is no claim by Waldrop, and there would be no evidence to support one, that Discover and Bruce violated subsections (1) or (2) of § 362(a) pertaining to the continuation of a judicial proceeding or the enforcement of any judgment obtained before the commencement of the case.  No pleadings or other activity took place in Discover's State Court case against Waldrop after the filing of the bankruptcy, and there was no attempt to enforce the judgment.  In fact, Bruce instructed Waldrop's employer to release the continuing wage garnishment which had been served upon it pre-petition.  The only issue is whether Bruce's instruction to Chase to hold onto the funds until further order of

14

the court constituted a prohibited act to "exercise control over property of the estate" under Subsection (3) of § 362(a).

In this Court's Order of May 27, 2016, overruling Discover and Bruce's Motion to Dismiss, this Court followed the rulings of the majority of cases, including the Courts of Appeal for the Second, Seventh, Eighth and Ninth Circuits, which hold that a creditor's post-petition retention of possession of property repossessed pre-petition over the demand of the debtor need not be accompanied by an affirmative act and such possession by itself constitutes "exercise or control over property of the estate" in violation of the automatic stay under § 362(a)(3). In other words, a creditor's "act of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3)." *Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699, 703 (7th Cir. 2009). See also, *In re Yates,* 332 B.R.1, 7 (10th Cir. BAP 2005) (holding creditor violated the automatic stay by refusing to turn over vehicle after filing of bankruptcy and that by doing so "exercised control" over property in violation of the stay); *Weber v. SEFCU* (In re Weber), 719 F.3d 72 (2nd Cir. 2013); *California Employment Development Department v. Taxel (In re Del Mission Ltd.),* 98 F.3d 1147, 1151 (9th Cir. 1996); Contra*, United States v. Inslaw*, 932 F.2d 1467 (D.C. Cir. 1991) (only affirmative acts to gain possession of, or to exercise control over, property of the estate violate the automatic stay of § 362(a)(3).

At the time of this Court's previous order, there was no binding Tenth Circuit decision on the issue. Thus, following the majority view, it was the opinion of this Court that upon demand from the debtor, Discover had a duty to take affirmative action to begin the process by which the issues of the automatic stay and its garnishment lien rights might be timely adjudicated. [Doc 26, pg. 11]. The recent decision of the Court of Appeals for

the Tenth Circuit on February 27, 2017, in *WD Equipment, LLC v. Cowen (In re Cowen)*,

849 F.3d 943 (10ᵗʰ Cir. 2017), makes this Court's previous position untenable.

In *Cowen* the creditor had repossessed the debtor's vehicle pre-petition.  The debtor

filed a Chapter 13 the following day and demanded the return of the vehicle.  When the

creditor refused, the debtor filed an adversary proceeding asserting, among other claims,

damages for a violation of the automatic stay.  As discussed above, § 362(a)(3) makes it

a violation of the automatic stay to commit "any act to obtain possession of the property

of the estate or property from the estate or *to exercise control over property of the estate*

. . .".  Observing that the statute bars "any act to exercise control over property", the Court

of Appeals said the word "act" means to "take action" or "doing something." *Id*., pg. 949.

Employing what it determined to be the "plain" meaning of the statute, mere retention of

property could not constitute a stay violation where there is merely "the act of passively

holding onto an asset." *Id*., pg. 949 (quoting *Thompson,* 566 F.3d at 703).  Following the

decision of the Court of Appeals for the D.C. Circuit in *United States v. Inslaw*, 932 F.2d

1467 (D.C. Cir 1991), the only Court of Appeals so holding, *Cowen* adopted the "minority

rule": only affirmative acts to gain possession of, or to exercise control over, property of the

estate violate Section 362(a)(3).  This Court is bound to follow *Cowen*.

In the present case, the undisputed facts show that Discover and Bruce did not

commit an affirmative "act" to exercise control over the garnishment funds in possession

of Chase; rather, Bruce simply told Chase to hold onto the funds which had already been

put in Chase's, not Discover's, possession pre-petition.  Discover's conduct in attempting

to have Chase maintain the status quo clearly falls within the scope of an "act of passively

holding onto an asset" which *Cowan* found not to be violative of the automatic stay.

16

However, even if Bruce's sending of the December 16, 2015, letter to Chase could be viewed as the necessary "act" to "exercise control" over the funds for violation of the stay, which the Court has found it wasn't, there is an additional basis for finding that there was no stay violation.

**B.    The agreement between Waldrop's counsel and Bruce for Garnishee-Chase to hold the funds standing alone provides an additional basis for finding there was no violation of the automatic stay.**

As has been discussed above, the Tenth Circuit's decision in *Cowen* compels this Court to find that as a matter of law the undisputed facts relative to the conduct of Discover and Bruce leads to the conclusion that there was no violation of the automatic stay. The Court finds, that independent of the holding in *Cowen,* the undisputed facts show an agreement between Waldrop's counsel with Bruce which precludes any possible finding of a violation of the automatic stay.

There was no mention in either the Complaint or in Bruce's Motion to Dismiss as to any possible agreement between the parties to permit Chase to retain possession of the garnished funds. However, as now asserted in Bruce's and Discover's Motions for Summary Judgment, there was an agreement between Cloar and Bruce such that Chase could retain possession of the funds, or at the very least Cloar's acquiescence for Chase to retain the funds would be an additional basis that this Court could find that Waldrop has no claim for violation of the automatic stay.

The evidence before the Court upon which Bruce and Discover rely in support of their argument that there was an agreement with Cloar as to Chase retaining possession of the funds primarily consists of transcripts of three telephone conversations between

17

Cloar and Bruce's employees on December 16 and 17, 2015.[6]  In pertinent part, those transcripts provide as follows:

**[December 16, 2005 at 14:53]**

(Cloar):  Well, I probably need to talk to somebody. She uh she has uh, uh a checking account garnished. And we've got uh, a bankruptcy filed so that the automatic stay is in place.  And, and I sent her fax day before yesterday, I think. And she hasn't released it yet.  And it's going to be I think tomorrow it's set for it's set to be released. And if, and her, so it's a serious time situation we've got here.

\* \* \*

(Cloar):  Uh, with Chase Bank. Now, Ms. Waldrop filed a Chapter 7 bankruptcy, and the stay went into place, but the money has not been released.

(Paralegal Debbie):  Yeah, I just got a garnishment answer from them on how much they're holding and I forwarded it to Mr. Bruce to review because um we had filed, or they had received the, the bankruptcy or, uh I'm sorry.  The bank had received the garnishment on the 7th and the bankruptcy wasn't filed until the 9th, so I gave him a review code to see what he wants me to do.

\* \* \*

(Paralegal):  Yeah, I him a, I gave it to him to review because a lot of times he will send the bank a letter telling them to hold the funds and not to release them.

(Cloar):  Okay.

(Paralegal):  And then I think, I think he also uh lets them uh . . ..

---

In her *Response*, Waldrop objected to the admissibility of the transcripts of the telephone conversations on the basis that they were unauthenticated or not properly identified. FRE 901.  Bruce, however, by his *Affidavit* in support of the Motion for Summary Judgment did identify the transcripts as true and correct transcriptions of the telephone calls and that such recordings were made and kept in the regular course of business. [Doc. 55-6, ¶ 6].  Inasmuch as Waldrop, based on Cloar's *Affidavit*, also contested the accuracy and completeness of the transcripts, the Court entered an *Order For Submission of Audio Recordings* directing Bruce to submit actual audio recordings of the conversations to the Court. [Doc. 66].  Bruce never personally spoke to Cloar, and his *Affidavit* is based upon facts related to him by his employees who had the conversations with Cloar. [Doc. 55-6].  In her Response to Bruce's Motion for Summary Judgment Waldrop attached a copy of the transcript of the telephone conversation with Bruce's office on December 16, 2015 at 2:53 PM. [Doc. 67-4].  It thus appears that Waldrop has waived any objection to the admissibility of the transcripts. The Court has listened to the audio recordings and compared the same to the transcripts. The transcripts accurately reflect the telephone conversations.

(Cloar):  Pardon me.

(Paralegal):  He sees if the, or the Trustee, when you go to your 341 meeting if uh, I guess they look at it then.

(Cloar):  Oh yeah, if uh, I mean, if the money is not released, if the money is taken aside from us filing again the Trustee would also (inaudible) back also it would be a preferential payment. So, and I think I put that in the letter I sent to Ms. Kelso. But, uh can I give you my phone number so someone can call me, when a decision is made?

* * *

(Cloar):  And this is set for release from the bank, by the bank tomorrow, so I kind of need to get something figured out.

* * *

**[December 17, 2015 at 15:43]**

(Paralegal):  Okay, How can I help you?

(Cloar):  I talked to you yesterday.

(Paralegal):  Right.

(**Cloar**):  **And you talked to Mr. Bruce and (inaudible) back and said that you had not uh that you'd leave the funds in place until the 341 hearing and let the Trustee decide what to do with it.**

**(Paralegal):  Correct.**

(Cloar):  Uh, the bank has not been notified, and at the close of the day they're going to release the funds. If some. . .

* * *

(Paralegal):  Yeah, the fax number that we have that we sent to Chase, we have it in our members, and the one we always send it to stop garn or hold garn or whatever. It went through.  I'm looking at the verification sheet right now.

(Cloar):  Oh, man. Can you fax that over to me?

(Paralegal):  Sure.

(Cloar):  Or email to me?  I've got to contact this bank and, and, and be sure they're notified.

(Paralegal):  Okay. Sure. Let me just got to print it off.

(Cloar):  That would be wonderful.

The above transcripts are supportive of Bruce and Discover's position that Cloar was not so much concerned with the funds being turned over to Waldrop, but that Chase not release them to Discover/Bruce. Cloar appears to confirm, and certainly makes no objection to, being told by Bruce's paralegal that "they leave the funds in place until the 341 hearing."  Indeed, in the conversation of December 17 at approximately 3:43 p.m. Cloar sought to have the paralegal confirm that Bruce had told her on December 16 that Chase would hold the funds:

(Cloar):   "And you talked to Mr. Bruce and (inaudible) back and said that you had not, uh, that you'd leave the funds in place until the 341 hearing and let the Trustee decide what to do with it."

(Paralegal):  Correct."[Doc. 55-11, pg. 2].

When Cloar asked that the paralegal send him a copy of the letter that Bruce had sent to Chase she faxed it to Cloar at 3:55 p.m., immediately following their telephone conversation. [Doc. 55-11].

Additionally, there is no evidence that Cloar made any objection to the funds being left with Chase after he was faxed a copy of the Bruce letter of December 16, 2015, advising Chase to "Please hold the garnishment funds until further order of the court." [Doc. 55-12].  In fact, Cloar's own *Affidavit* filed in opposition to Bruce's *Motion* recites that in the conversations with Bruce's office that he "wanted Bruce to take action to prevent the garnished funds *from being released to Bruce*", not that Chase release the funds to

20

Waldrop. (Emphasis added) [Doc. 63-3, ¶ 5].[7]   After the telephone conversation of December 17 when Bruce's paralegal faxed Cloar a copy of the letter to Chase, the next apparent contact that Cloar had was his unsuccessful attempt to call Bruce's office nearly a month later on January 14, 2016. [*Response,* Doc. 63, ¶ 14].

Waldrop asserts that there was no agreement between Bruce and Cloar that Chase be permitted to hold onto the funds pending further action by the Court or the Trustee. The denial of such an agreement primarily rests upon two pieces of evidence. First, Cloar's demand letter dated December 9, 2014, (sic) which was faxed to attorney April Kelso in Bruce's office on December 11, 2015, which requested that "you contact Chase Bank and release her (Waldrop's) funds immediately." [Doc. 63-2, pg. 2).  Second, Cloar's *Affidavit* that states, "At no point in time did I agree to allow Bruce to keep the garnished funds on hold pending the decision of the court, so as to prevent Waldrop's access to those funds." [Doc. 63-3, ¶ 7].

With regard to the demand letter, it appears that Cloar did, in fact, initially take the position that the garnished funds were to be unconditionally released to him or his client. Unfortunately for Waldrop, by the time Cloar spoke to Bruce's office on December 16 and 17, 2015, it appears clear that he had altered his position, and that he was only concerned with Chase not releasing the funds to Discover or Bruce.  This is made clear in both the audio tapes of the conversation with Bruce's paralegal on December 17, 2015, and Bruce's letter of December 16, 2015, to Chase which the paralegal faxed to Cloar immediately following their December 17, 2015, conversation.  Significantly, Cloar does not appear to

---

[7] In another part of the *Affidavit*, Cloar states that "at least one additional call was made to Bruce's office in an attempt to get *Bruce* to release the garnished funds." [Doc. 63-3, ¶ 9].

have protested the freezing of the funds in Chase's possession from December 17, 2015, until other counsel for Waldrop filed this adversary proceeding more than a month later.[8]

Most affidavits, including Cloar's, are by their nature "self-serving."   That does not make them irrelevant or to be disregarded.   On the other hand, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment". *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007); *Joint Technology, Inc. v. Weaver*, 567 Fed.Appx. 585, 588 n.3 (10th Cir. 2014) (finding that *Scott v. Harris* applied to an affidavit that was "largely uncorroborated, conclusory, and contradicted, in part, by a two-hour recording of a conference call. . .".).  As stated in *Pierson v. Bassett,* 534 Fed.Appx. 768, 771 (10th Cir. 2013);

> However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.

> * * *

> ***No rational trier of fact could believe plaintiff's characterization of his own behavior as compliant and never argumentative after hearing the audiotapes. Thus, the District Court did not err by granting summary judgment in favor of defendants because plaintiff's affidavit is "blatantly

---

[8] Cloar claims that he unsuccessfully tried to make phone contact with Bruce's office somewhere around January 14, 2016, "in an attempt to get Bruce to release the garnished funds." [*Affidavit*, Doc. 63-3, ¶ 9].  There is no evidence that Bruce was made aware of the fact that Cloar had allegedly changed his mind and was now once again demanding that the funds be released by Chase.

contradicted by the record." *York v. City of Las Cruces*, 523
F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550
U.S. at 378, 127 S.Ct.1769).

Waldrop asserts that summary judgment is precluded because "[t]here is one major factual issue in this case: whether an agreement existed between Waldrop and her bankruptcy attorney, Cloar, to hold the garnished funds in place." [*Response*, Doc. 67, pg.2]. Saying that there is a disputed issue of fact does not make it so. Bruce and Discover have come forward with evidence in the form of transcripts of phone conversations between Cloar and Bruce's office indicating that there was an agreement between Cloar and Bruce for Chase to hold the funds, but Waldrop has not come forward with any *evidence* to refute the existence of such an agreement. Waldrop controverts the claim of an agreement by way of an Affidavit of Cloar in which he states, "At no point in time did that I agree to allow Bruce to keep the garnished funds on hold pending the decision of the Court, so as to prevent Waldrop's access to those funds." [Doc. 63-3 ¶ 7].

It is well-settled that a party cannot avoid summary judgment simply by raising conclusory allegations. *Western World Ins. Co. v. Stack Oil, Inc*., 922 F.2d 118, 121 (2nd Cir. 1990). Cloar's conclusory statements that a factual dispute exists is not sufficient to ward off summary judgment where the evidence of the moving party by way of recorded telephone conversations between Cloar and Bruce's office is such that no reasonable trier of fact could rule in favor of the non-moving party. In essence, Waldrop asks this court to accept Cloar's Affidavit to rebut the agreement which the Court heard with its own ears. The Court finds that there is little doubt as to the material fact that Waldrop's counsel, despite an initial demand for possession of the garnished funds, agreed with Bruce for Chase to hold onto the funds pending future determination.

23

**C.     There is insufficient evidence for the Court to determine as an undisputed material fact that the garnished funds were partially exempt as constituting wages earned within ninety (90) days preceding service of the garnishment summons.**

By way of her Complaint, Waldrop also seeks that "her access to her funds be restored".   In other words, she not only seeks damages for willful violation of the automatic stay, but that she is entitled to recover the garnished funds.   As a matter of law, she is not entitled to this relief.   As noted above, this Court has found that the garnishment summons was served on Chase on December 7 or 8, 2015,  both dates prior to the bankruptcy.  Title 12 O.S. § 1185 provides that "[f]rom the time of service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property...in his possession. . .".  "Clearly, the statute contemplates the critical date to be the date of service of the garnishment summons." *First Mustang State Bank v. Bloodworth, Inc.*, 1991 OK 65 ¶ 19, 825 P.2d 254.   Thus, as of December 7, but not later than December 8, Discover had a lien on the subject funds.  Funds in the garnishee's possession at the time of bankruptcy filing are property the estate, but the automatic stay prevents the judgment creditor from seeking disbursement of the funds.  *In re Johnson,* 479 B.R.159 (Bankr. N.D. Ga. 2012).   Nevertheless, the lien attached upon service of the garnishment and bankruptcy filing does not affect the creditor's lien unless it is avoided as a preference or for impairing an exemption. *Id.*

No action has been taken by Waldrop to avoid the lien, and liens that are not avoided during bankruptcy administration "ride-through" a Chapter 7 bankruptcy case and survive the debtor's discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 82-83, 111 S. Ct. 2150 (1991); *In re Willis*, 199 B.R. 153 (Bankr. W.D. Ky. 1995) (a lien "rides through" bankruptcy unaffected, unless the lien is disallowed or avoided); *In re Bensen*, 262 B.R.

24

371 (Bankr. N.D. Tex. 2001) ("A valid lien or security interest on exempt property securing a pre-petition debt remains enforceable unless the lien is void or voidable pursuant to one of a number of avoidance provisions in the Bankruptcy Code.").

In short, nothing in 11 U.S.C. § 524 precludes a creditor from enforcing a pre-petition garnishment lien that has survived the debtor's Chapter 7 discharge. Although Discover was stayed from enforcing the lien during the pendency of the bankruptcy case by the automatic stay, nothing would preclude it from now enforcing that lien post-discharge.[9] Discover may be vulnerable to a preference action under Section 547 or the funds may qualify as some form of exempt property triggering the application of Section 522(f); however, neither Waldrop, Discover nor the Chapter 7 trustee have sought such relief. Those issues are not currently before the Court.[10]

The problem for this Court to adjudicate the relative rights of Waldrop and Discover to the garnished funds is that there is insufficient evidence before the Court as to resolve that issue as a matter of law. In her Amended Schedule C Waldrop claimed the exemption pursuant to 31 O.S. § 1(18) which exempts from execution "[s]eventy-five percent (75%) of all current wages or earnings for personal or professional services earned during the last ninety (90) days . ..". While claiming an exemption in the funds, Waldrop stated that

---

[9] The automatic stay terminates the earlier of the time the case is closed or the discharge is granted or property is no longer property of the estate. 11 U.S.C. § 362(c)(1) and (2). Waldrop was granted a discharge on March 18, 2016 [Doc. 22].

[10] Waldrop's original Schedules and Statement of Financial Affairs filed with her Petition on December 9, 2015, did not claim the garnished funds as exempt nor reflect the garnishment proceedings with Discover. Amended Schedules and Statement of Financial Affairs filed on February 29, 2016, after the filing of the present adversary proceeding, did claim funds subject to the garnishment as exempt; however, the current value and amount of the exemption claimed was reflected as "unknown". [Doc. 20, pg.12]. Discover did not file an objection to the claim of exemptions within thirty days after the filing of the amended schedules as required by Fed. R. Bankr. P. 4003(b), and Waldrop has not filed a motion to avoid lien under § 522(f).

the "current value" of the exemption and the "amount of exemption" were both "unknown". [Doc. 20, pg. 12]. Waldrop's utilization of the term "unknown" in the Schedules coupled with specific reference to the Oklahoma exemption statute which sets forth the limit of the exemption (75%) restricts any potential exemption to the statutory limit notwithstanding Waldrop's statement that the amount is "unknown", i.e. 25% of $1,033.64 or $775.23. *In re Hall*, 453 B.R. 22 (Bankr. D. Mass. 2011) (debtor's scheduling of exemption as "unknown" did not entitle him to unlimited exemption by virtue of trustee's failure to timely object to exemption); *In re Soares,* 471 B.R. 20 (Bankr. D. Mass. is 2012).[11] Thus, as a matter of law the Court could determine whether Waldrop is entitled to an exemption *if Waldrop can establish that the funds on deposit constituted wages earned within ninety (90) days preceding the service of the garnishment summons.*[12] The Court might fairly assume that the funds on deposit were wages, but in determining summary judgment the Court cannot assume anything. It is for the parties to demonstrate to the Court (or stipulate) that there is no dispute as to the fact that such funds were wages.

---

[11] These two cases distinguish the seminal Supreme Court case of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct.1644 (1992), which held that a Chapter 7 trustee's failure to timely object under Rule 4003(b) to a debtor's listing "unknown" as the value of a claimed exemption resulted in the exemption of the entire asset and its removal of the bankruptcy estate even if there was no colorable basis for claiming the exemption. *Hall*, *Soares* and the present case are distinguishable from *Taylor* in that in *Taylor* the debtor claimed the entire proceeds of a lawsuit without reference to a statute which placed a cap on the exemption.

[12] There also exists the legal question as to whether otherwise exempt funds lose their exempt status once deposited in a bank account. The meaning of a state exemption is controlled by applicable state law, and the bankruptcy court is bound by the state's construction of a state statute. See e.g. *In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995). There appears to be no Oklahoma law directly on point. Applying the laws of other states, some bankruptcy courts have concluded that exempt wages retain their exempt status once paid and deposited in the debtor's bank account. In re *Norris*, 203 B.R. 463, 465 (Bankr. Nev. 1996); Contra, *In re Resler,* 282 B.R. 246 (Bankr.D. Kan. 2002).

Accordingly, for the reasons set forth above, Bruce's and Discover's *Motions for Summary Judgment* are **GRANTED IN PART,** and pursuant to Fed. R. Bankr. P. 9021(a) a separate Judgment will be entered dismissing Waldrop's claims for violation of the automatic stay.  There remains for future adjudication the issue of the respective rights of Waldrop and Discover as to the funds subject to Discover's garnishment lien.

# # #