

**Dated: October 25, 2017**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )    Case No. 15-14689-JDL
Nikki Marie Waldrop,                      )    Ch. 7
                                          )
                    Debtor.               )
                                          )
_____          )
                                          )
Nikki Marie Waldrop,                      )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )    ADV. 16-1015-JDL
                                          )
Discover Bank, and                        )
Stephen L. Bruce, Esq.,                   )
                                          )
                    Defendants.           )

**OPINION AND ORDER DENYING MOTION FOR SANCTIONS**

**1. Introduction**

This matter comes on for consideration upon *Defendant Stephen L Bruce Esq.'s*

*Motion for Sanctions with Brief in Support* (the "Motion") [Doc. 90], the *Response in*

*Opposition to the Motion for Sanctions* filed by National Litigation Law Group ("the Law Firm") (the "Response") [Doc. 94] and *Plaintiff's Response to Defendant Bruce's Motion for Sanctions* ("Plaintiff's Response") [Doc. 92][1] and the oral argument and exhibits offered at the hearing conducted October 24, 2017.  The following constitutes Findings of Fact and Conclusions of Law required by Fed. R. Bankr. R. 7052 and 9014.

## 2. Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1334(b) and the General Order of Reference entered in this District pursuant to LcvR 81.4.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).   The Court retains jurisdiction although the case was dismissed on September 26, 2017.  *In re Johnson*, 575 F.3d 1079 (10th Cir. 2009); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395-98, 110 S. Ct. 2447 (1990) (voluntary dismissal of a lawsuit does not deprive the district court of jurisdiction over a motion for sanctions under Rule 11); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1220-21, 1223-24 (10th Cir. 2006) (affirming a sanctions award under 28 U.S.C. §1927 that was ordered well after the case was dismissed with prejudice at the plaintiff's request); *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1552-57 (10th Cir. 1996).

## 3. Background

This adversary proceeding was commenced by Plaintiff's Complaint alleging that Defendants Discover Bank ("Discover") and its attorney, Stephen L. Bruce ("Bruce"), violated the automatic stay by instructing Waldrop's garnishee-bank to retain possession

---

[1] Attorney Robert J. Haupt ("Haupt") was at all times pertinent to this litigation a member of the Law Firm representing the Plaintiff.  He left the Law Firm in July 2017.  Haupt, on behalf of both himself and as counsel for the Plaintiff, has filed a *Response* to Bruce's Motion separate and apart from that of the Law Firm.

of funds garnished pre-petition pending further order of the court.  Discover and Bruce first challenged the Complaint by filing a Motion to Dismiss asserting that as a matter of law Plaintiff had not stated a cause of action where Discover held a valid garnishment lien on the funds, that it was under no obligation to release the funds to the Plaintiff and merely instructed the garnishee-bank to hold the funds "subject to further order of the court."  The Court denied the Motion to Dismiss. [*Memorandum Opinion and Order Denying Defendant's Motions to Dismiss*, Doc. 26].  In its Order the Court specifically found that Discover did not have a duty to immediately dismiss the garnishment, release of the funds or that the filing of the bankruptcy impaired any garnishment lien rights which it may have had in the funds. [Doc. 26, pgs. 13- 14].  The Court did find, however, that Discover did have the obligation to take some affirmative action to seek appropriate relief from the bankruptcy court, either by lifting the stay, if it thought appropriate, or by seeking enforcement, adequate protection or determination of its lien rights.  This obligation on the part of Discover/Bruce precluded the Court from dismissing the case at the initial pleading stage of the case. *Id.*

After the Motion to Dismiss was overruled, Bruce and Discover answered the Complaint, conducted discovery and then moved for summary judgment.  In their Motion for Summary Judgment, Bruce and Discover argued (1) there was no duty on their part to take any action with regard to the garnishment funds as they had earlier argued in their Motion to Dismiss and (2) for the first time argued that there was an agreement between Plaintiff's prior bankruptcy counsel, John Cloar, and Bruce that the garnishee-bank could

retain possession of the funds.[2]

As to Bruce's first argument, the Court found that since its decision on the Motion to Dismiss the Tenth Circuit had ruled that a creditor simply retaining possession of property of the debtor did not constitute committing an "act", taking "action" or "exercising control" over such property so as to violate § 362(a)(3), and, correlatively, there was no duty on the part of the creditor to take any affirmative action with regard to the property in its possession. *WD Equipment, LLC v. Cowen (In re Cowen),* 849 F.3d 943 (10th Cir. 2017). As to the second issue, the Court found, based on the undisputed facts, that within days of the bankruptcy filing there was an agreement between Plaintiff's former counsel, Cloar, and Bruce that the garnished funds would remain in the Bank's possession 'pending an ultimate determination as to the rights of the parties'. The Court thereupon entered summary judgment in part for Discover and Bruce dismissing the Plaintiff's claims for violation of the automatic stay.

### 4. Rule 9011 Standard

Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P) 9011[3] warns attorneys that by "presenting to the court a petition, pleading, written motion, or other paper," they

---

[2] There had been no mention in either the Complaint or in the Motion to Dismiss of any purported agreement between counsel that the garnishee-bank would retain possession of the funds. Had the Court been made aware of evidence of such an agreement, it would likely have made "short- shrift" of Plaintiff's claims by converting the Motion to Dismiss to one for summary judgment as is permitted by Fed. R Civ. P. 12(d) made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b).

[3] Bankruptcy Rule 9011 is based on Fed. R. Civ. P. 11, "and rulings under Rule 11 are authoritative in cases following Bankruptcy Rule 9011." *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 437 (10th Cir. 1996); *In re Harmes*, 423 B.R. 678, 680 (Bankr. D. N. M. 2010); *In re Renewable Energy Development Corp.*, 2014 WL 527229 (Bankr. D. Utah 2014) (slip opinion). Accordingly, much of this Court's analysis is based on cases under Rule 11.

certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the paper meets the following conditions:

> (1)  it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions are therein warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or for establishment of new law;
>
> (3)  the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

In short, Rule 9011 requires that a "pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and...not interposed for any improper purpose." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015); *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993).

This Court is guided by certain core principles when deciding to impose sanctions against an attorney under Rule 9011.  "This court is also mindful that Rule 11 sanctions are an extraordinary remedy.  Rule 11 is intended to discourage frivolous litigation, not to punish litigants." *Greeley Publishing Co. v. Hergert,* 233 F.R.D. 607, 611 (D. Colo.2006); *Ludwikoski & Associates, Inc. v. Yeti Coolers, LLC*, 2014 WL 3767684 *3 (D. Kan. 2014) ("Rule 11 sanctions are reserved for the rare and exceptional case where the action is

clearly frivolous, legally unreasonable or without legal foundation."). In determining a motion for sanctions, the Court must resolve all doubts and draw all inferences in favor of the signer. *Airlines Reporting Corp. v. Aero Voyages, Inc.*, 721 F.Supp. 579, 586 (S.D. N.Y.1989); *Eavenson Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 544 (3rd Cir. 1985) (In deciding a Rule 11 motion, "[a]ny doubt . . . should be resolved in favor of the party charged with the violation.").

Rule 9011 sanctions may be imposed on the filing of the complaint when the frivolous nature of the claims-at-issue is unequivocal. *Hall v. Bed Bath & Beyond, Inc.,* 705 F.3d 1357,1372 (Fed Cir. 2013). The fact that a legal theory has a "long-shot" does not necessarily mean it is sanctionable under Rule 9011; rather, the operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands. *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2nd Cir. 2011). In determining whether a given argument for change in the law is reasonable or frivolous, the courts may look to the extent to which counsel has researched the area, whether there is some support in the dissents, etc., for the position he or she take, and whether legitimate law review articles of other reputable legal journals raise the same or similar argument. If some other court of jurisdiction has actually accepted the argument, the argument seems extremely unlikely to be the proper subject of sanctions. *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2nd Cir. 1992). "Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Predator*, 793 F.3d at 1182.

On the merits of Bruce's Rule 9011 claim, the question before the Court is whether the Plaintiff's *Complaint* was unwarranted under the facts or law.  To answer that question, the Court must evaluate the Law Firm's conduct under a standard of "objective reasonableness -- whether a reasonable attorney admitted to practice before the [Bankruptcy Court] would file such a document."  *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir. 1988); See *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 554, 111 S.Ct. 922, 934-35 (1991) (reversing the District Court because of its use of a subjective standard).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 9011 has been violated, the court may impose an appropriate sanction," meaning one "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). Before considering whether the actions of the Plaintiff and/or the Law Firm violated Rule 9011, the Court must address the procedural issue as to whether Bruce has timely presented his Sanctions Motion.

### 5. The Timeliness of the Rule 9011 Motion

This adversary was commenced by the filing of the *Complaint* on January 27, 2016. [Adv. Doc. 1].  On February 26, 2016, Bruce sent Plaintiff's Law Firm the requisite "safe harbor" letter with a copy of a proposed Motion for Sanctions giving the Law Firm twenty-one (21) days to withdraw or correct the allegedly offending pleading as required by Rule 9011(c)(1)(A).  [Law Firm Trial Ex.4].  The safe harbor letter argued, among other things, that as a matter of law Discover's retention of the garnished funds in the hands of the garnishee-bank constituted merely maintaining the status quo and did not violate the

automatic stay.  The letter asserted that the Complaint was "not warranted by existing law and is brought for an improper or frivolous purpose". *Id.*  There was no mention in either the safe harbor letter or the draft of the Motion for Sanctions attached to it of any purported agreement between Cloar and Bruce that the garnishee-bank could maintain possession of the funds.

Bruce filed his Rule 12(b)(6) Motion to Dismiss on March 23, 2016. [Doc. 21].  The Motion to Dismiss was premised on the basis that as a matter of law there was no obligation on the part of Discover/Bruce to release possession of the funds or otherwise take any action which might impair its garnishment lien rights.  There was no mention in the Motion to Dismiss of the purported agreement between Cloar and Bruce.  The Motion to Dismiss was overruled by the Court's Opinion and Order of May 27, 2016 [Doc. 26].  In its Order the Court held that while there was no obligation on the part of Discover/Bruce to release the garnished funds or take any action which would impair its lien rights (which the Court noted would pass through the bankruptcy unaffected), there was an issue of fact remaining as to Discover's obligation as a creditor "to take some affirmative action to begin the process by which the issues of the automatic stay and its lien rights might be timely adjudicated." [Doc. 26, pg. 11].

After the Motion to Dismiss was overruled, on November 8, 2016, Bruce sent the Law Firm a second safe harbor letter demanding that the Complaint be dismissed or Rule 9011 sanctions would be sought. [Law Firm Trial Ex. 11].  The letter primarily relied upon *In re C. W. Mining Co.*, 477 B.R. 176, *aff'd*, *In re C. W. Mining Co.* 749 F.3d 895 (10th Cir. 2014), in which the 10th Circuit held that a creditor who has taken possession pre-petition of debtor's property should not have to turn over such property absent assurance that its

pre-petition position would be protected.  In this letter, for the first time Bruce mentioned a purported agreement between Bruce and Cloar, stating that Bruce's asking the garnishee-bank to maintain the status quo by holding onto the funds until the further order of the court "was taken with approval of John Cloar, Ms. Waldrop's bankruptcy attorney, whose name also appears on the signature block of your adversary pleadings." [Id. at pg 1].  The draft of a proposed Motion for Sanctions attached to the safe harbor letter alleged a "December 17, 2015 conversation wherein Cloar agreed to Bruce's suggested course of action, namely, to send a letter to the garnishee-bank, asking it to hold the garnished funds . . .." *Id*.

On June 13, 2016, both Discover and Bruce filed their Answers to the Complaint. [Docs. 28 and 29].  Neither Answer raised the issue of an agreement between Cloar and Bruce. On October 27, 2016, four-and-a half (4 ½) months after having filed their Answers, Discover and Bruce filed their Motions for Summary Judgment. [Doc. 55].   In the Motions, Discover/Bruce for the first time in any pleading raised the issue of the agreement with Cloar.  On March 29, 2017, the Court entered its *Opinion and Order Granting in Part Defendants' Motions for Summary Judgment* and, by separate document, the *Judgment* dismissing Waldrop's claims of violation of the automatic stay. [Docs. 83 and 84].  Based upon the intervening decision of the Tenth Circuit in *Cowen*, the Court found there was no duty on the part of Discover to take any affirmative action with regard to the funds, and that its "inaction" in maintaining the status quo was not violative of the automatic stay. The Court further found that the agreement between Cloar and Bruce for the garnishee-bank to hold the funds also precluded assertion of a violation of the automatic stay.

9

Bankruptcy Rule 9011 (or Rule 11) does not contain explicit time limits for bringing a motion for sanctions; however, the Advisory Committee Notes to the 1993 amendments to Rule 11 gives some direction:

> * * * Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely.  In other circumstances, it should not be served until the other parties had a reasonable opportunity for discovery.  Given the "safe harbor" provision discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."

Acting consistent with the Advisory Note, courts have thus held that "where appropriate, such motion should be filed at an earlier time, as soon as practicable after discovery of a Rule 11 violation." *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992) (court rule requiring Rule 11 motions to be filed not later than ninety days after entry of judgment merely represents "the outer parameters of the timeliness for sanction claims").  At a minimum, a party must bring his motion in "a reasonable amount of time," with reasonableness dependent on "the specific facts and circumstances in a given case." *Id*.

In *Thomson v. United Transportation Union*, 167 F.Supp.2d 1254 (D. Kan.  2001), the defendant did not file its Rule 11 motion for sanctions until after the court had granted summary judgment and dismissed the plaintiff's complaint. In holding the filing of the motion untimely, the court stated as follows:

> While the Tenth Circuit, then, (in *Hutchinson v. Pfeil*,, 208 F.3d 1180 (10th Cir. 2000)) did not directly address the issue before the Court today, the Circuit's decision in *Hutchinson* strongly suggests that if faced with the issue, the Circuit would follow the *Ridder* decision and hold that a Rule 11 motion filed after summary judgment (regardless of whether service of the

10

motion occurred prior to judgment and within the 21-day safe harbor period) is untimely.

The Court is inclined to deny defendant's motion as untimely as it was filed after the entry of summary judgment and because defendant's counsel offers no explanation whatsoever for waiting until that late date to file the motion.  If defendant's counsel truly believed that plaintiff's conduct was so abusive and vexatious as to warrant service of the Rule 11 motion in July 2000, then defendant's counsel should have pursued that motion by filing it with the court shortly after the expiration of the 21-day safe harbor period.  Instead defendant's counsel elected to wait six months, all the while spending additional time and money in the discovery process and the summary judgment process.   The Court cannot comprehend why defendant would not attempt to avoid these fees and costs by filing his motion earlier.[4]

*Thomson*, 167 F.Supp.2d at 1259-60.  Likewise, as stated in *Mary Ann Pensiero, Inc. v.*

*Lingle*, 847 F.2d 90, 99 (3rd Cir. 1988), in holding that all motions requesting Rule 11

sanctions be filed before entry of final judgment and, where appropriate, at an earlier time,

and as soon as practicable after discovery of the Rule 11 violation the court stated:

Promptness in filing valid motions will serve not only to foster efficiency, but in many instances will deter further violations of Rule 11 which might otherwise occur during the remainder of litigation. (citations omitted).  If a party's action is "abusive" as contemplated by Rule 11, the adversary should be able to realize immediately that an offense has occurred. Seldom should it be necessary to wait for the district court or the court of appeals to rule on the merits of the underlying question of law.  If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the paper is unlikely to have violated Rule 11.

---

[4] The Court recognizes that the court's statement in *Thomson* is dicta in that the court went on to state that it "need not decide whether Defendant's motion was timely filed because the Court denies the motion on its merits." 167 F.Supp.2d at 1260.  This Court does not cite *Thomson* for precedential authority, but finds its rationale on untimeliness persuasive, if not compelling.

11

See also, *Hutchinson v. Pfeil,* 208 F.3d 1180, 1183-84 (10th Cir. 2000) (in dicta stating that, "[a]s the motion was filed subsequent to summary judgment, long after disposition of the interlocutory disputes cited as sanctionable conduct, reliance on Rule 11 would have been untimely and in violation of the rule's twenty-one day 'safe harbor' provision . . ..."); *Morgan v. Covington Township*, 2013 WL 4538637 at *3 (M.D. Pa. 2013) (defendant's motion for sanctions denied where filed after judgment was entered in favor of defendants following their Rule 50 motion at trial); *Fassi v. Our Lady of Perpetual Help Roman Catholic Church*, 2006 WL 709799 at *6 (E.D. Pa. 2006) (Rule 11 motion filed after order granting defendant's motion to dismiss was not timely); *Robert S. v. City of Philadelphia*, 2001 WL 1021190 at *5 (E.D. Pa. 2001) (Rule 11 motion filed by defendants following a jury verdict in their favor was untimely).

The policy behind Rule 9011 is to prevent baseless filings and promote judicial economy.  See *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. 2447.  Given that "the primary purpose of sanctions, is to deter subsequent abuses", that purpose is not served "by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end." *Matter of Yagman*, 796 F.2d 1165, 1183  (9th Cir. 1986); *Islamic Shura Council of Southern California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014) (Rule 11 motion for sanctions made after "judicial rejection of the offending contention" is untimely).

In *In re Quinones*, 543 B.R. 638, 648 (Bankr. N.D. Cal. 2015) the debtors filed Rule 11 sanction motions in two adversary proceedings which they contended had groundlessly been brought against them seeking the non-dischargeability of debts.  Approximately a year and a half after the debtors had first asserted Rule 11 violations, the bankruptcy court

12

ruled in favor of the debtors in both adversaries.  After the court had ruled in the debtors'

favor in both cases, the debtors filed their sanction motions.  In denying the Rule 11

motions the court, in language applicable to the present case, stated as follows:

> [C]ourts look with disfavor on Rule 11 motions brought at the conclusion of a matter.  Since the "cure" of alleged Rule 11 violation is the withdrawal or correction of an improper pleading, it follows that the purpose of  Rule 11 may not be achieved at the conclusion of a matter, when issues have been disposed of, and the prospective withdrawal or correction of a pleading is no longer a relevant concept.***
>
> Further, delaying the bringing of a Rule 11 motion until the matter is actually or essentially concluded, and depending therefore on the favorable disposition of the matter, turns Rule 11 from a powerful tool for the deterrence of abusive litigation practices to a mere fee shifting statute, a transformation that the language of the statute disclaims and the cases interpreting Rule 11 condemn (citations omitted).  In these cases, the Quinoneses' delay in bringing the *Sanctions Motions* until the favorable conclusion of these APs is exactly the sort of behavior that should result in the Court denying the motions." **** There is no excuse for such delay; and, more fundamentally, there is no longer any conduct to be corrected. The Quinoneses' *Sanctions Motions* must also be denied for this reason.

The Sanction Motion was filed by Bruce on August 11, 2017, eighteen-and-a-half

(18 ½) months after the filing of the Complaint, seventeen (17) months after the first safe

harbor letter, sixteen (16) months after filing the Motion to Dismiss, nine (9) months after

the second safe Harbor letter and the filing of the Motion for Summary Judgment and four-

and-a-half (4 ½) months after the entry of the judgment in Bruce's favor.  If Bruce truly

believed that the Law Firm's conduct was so abusive and vexatious to warrant service of

the safe harbor letters, and this Court has no reason to believe that Bruce wasn't sincere

in that belief, he should have pursued that motion by filing it shortly after the expiration of

the twenty-one (21) day safe harbor in either February and/or November 2016.  Instead, Bruce elected to wait and spend additional time and money in the discovery process and summary judgment process.  The Court doesn't know the reason for the delay, and the pleadings and oral argument did not enlighten the Court.  It may have been because Bruce felt confident of the outcome and wanted to establish a precedent rather than cutting the litigation off at an early stage.  "Suffice it to say that [Discover and Bruce] would be better served by reexamining their own litigation tactics rather than condemning plaintiff's counsel for her litigation tactics." *Thompson v. United Transportation Union,* 167 F.Supp.2d at 1260.  The Court finds that Bruce's Motion was not timely filed and can be denied on that basis alone, so is not necessary for the Court to decide the sanction motion on its merits. Accordingly,

**IT IS ORDERED** that Defendant Stephen L. Bruce Esq.'s Motion for Sanctions [Doc 90] is hereby **DENIED**.

# # #